IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Ronald Miles,**<br>　　Petitioner, | )<br>)<br>) |
| v. | )　　1:21cv1119 (TSE/TCB) |
| | ) |
| **Harold Clarke,**<br>　　Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Petitioner Ronald Miles ("Miles" or "petitioner"), a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his disciplinary conviction for violating Offense Code 119c (refusal to participate in reentry planning or preparation) because he failed to cooperate in obtaining an original birth certificate. Miles alleges the conviction violated his due process rights because he had provided a copy of his birth certificate to the Virginia Department of Corrections ("VDOC") in 2011, and that "there is no evidence" to support his conviction because the change in policy that required him to obtain an original birth certificate was not retroactive. [Dkt. No. 1-1 at 7, 10]. The respondent admits that Miles had previously provided the VDOC with a copy of his birth certificate in 2011, but the VDOC policy on the required necessary identification documents needed to assist an inmate's transition back into the community when released was amended in 2017 and the amendment requires inmates to provide or obtain an original birth certificate.

Miles § 2254 petition raises the following claims with regard to his disciplinary hearing:

　　I.　　Miles due process rights were violated when he was given "a false disciplinary charge" on February 24, 2020 that alleged he had failed "to obtain a birth certificate" because there was no evidence that the revised policy was retroactive and because Miles had already provided the VDOC with a copy of his birth certificate in 2011. [Dkt. No. 1-1 at 7].

II.     Miles due process rights were violated because he was charged without being afforded the 30-day grace period to comply with the new policy (requiring an original birth certificate), which he argues only applies to a "newly classified offender." In addition, the new policy was not retroactive. [Id. at 7-8].

III.     Miles due process rights were violated after his initial conviction "was reversed and a rehearing ordered" because "the entire record was required to be expunged" and he should have been restored to "Class Level one from Class Level four. Although Miles was restored to Class Level I on September 16, 2020, "the effective date was not restored to 5-28-20 as it was supposed to be." [Id. at 8].

In response, respondent has filed a motion for summary judgment, with a supporting brief and affidavits, and advised Miles of his right to file responsive materials pursuant to Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. Nos. 11-13]. Miles has responded to the motion for summary judgment and he has also filed a motion for summary judgment. [Dkt. Nos. 16, 17]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's motion must be granted, Miles' motion must be denied, and the judgment must enter in favor of respondent.

## I. Undisputed Facts[1]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Respondent, pursuant to Rule 56 and Local Rule 56, included a statement of undisputed material facts in his motion for summary judgment, which Miles has largely not disputed. See Gholson v. Murray, 953 F. Supp. 709, 714 (E.D. Va. 1997) (a court assumes uncontroverted

---

[1] The record of admissible evidence includes respondent's affidavits and exhibits [Dkt. Nos. 17-1, 17-2]; Miles' sworn petition [Dkt. No. 1], see Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"); and the record of the related habeas proceeding in the Supreme Court of Virginia (Miles v. Clarke, Record No. 201210) ("Hab. at __").

2

facts in movant's motion for summary judgment are admitted); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (a movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).

Since each party has filed a motion for summary judgment [Dkt. Nos. 11, 16], "the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). In reviewing the motions, "the court views all material evidence to decide whether the undisputed facts could permit a reasonable jury to return a verdict for the plaintiff." Mays v. Sprinkle, 992 F.3d 295, 304 (4th Cir. 2021) (internal emphasis omitted) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

1.      Miles was committed to the custody of the VDOC on January 21, 1998 to serve a total sentence of 35 years and six months. Miles is currently satisfying a sentence that is computed under the Earned Sentence Credit ("ESC") system. Va. Code Ann. §§ 53.1-202.2 through 53.1-202.4. Under the ESC system, Miles is eligible to earn a maximum of 4.5 days for every 30 days served. Miles was transferred to the VDOC's State Farm Enterprise Unit on April 2, 2019. [Dkt. No. 17-1 at 1-2].

2.      The VDOC established a Re-Entry Planning policy in 2011, which was set forth in VDOC Operating Procedure 820.2, Re-entry Planning ("OP 820.2"). [Dkt. No. 17-2 at 1]. Sometime in 2011, Miles provided the VDOC with a copy of his birth certificate in accordance with OP 820.2 as it existed at that time. [Dkt. No. 1-1 at 1]. The policy was amended in 2017 and

3

the amendment states, in relevant part, that "to assist offenders in getting proper identity documents upon release, an effort will be made to obtain the *original birth certificate* ... for each offender during their incarceration." OP 820.2 VII(E)(1) (emphasis added). The policy's enforcement provisions state that "offenders who are required to obtain their official birth certificate but refused to make a reasonable effort shall be charged with offense code 119c, refusal to participate in reentry planning or preparation." OP 820.2 VII(E)(2)(d). The version applicable to the present matter was effective March 1, 2017.

3. OP 820.2, Re-Entry Planning, sets out the VDOC's planning and provision of transitional and re-entry services for inmates housed in VDOC facilities. OP 820.2 is intended to assist an inmate's transition back into their communities upon release from incarceration, and to improve an inmate's opportunities for treatment, employment, and housing while on community supervision. OP 820.2's requirement that an inmate obtain his original birth certificate prior to release is one of the identity documents an inmate is required to obtain before they are released. [Dkt. No. 12-2 at 1-2; 6-35].[2]

4. During his annual review on January 24, 2020, Miles was told that he needed to obtain an original birth certificate. Miles told Reporting Officer Polk that he "had an original," but when Polk "checked [his] records the same week," Polk could only verify that the VDOC had "a copy." (Hab. at 146, 147). Polk met with Miles, and other inmates, on February 11, 2020 in order for Miles and the other inmates to complete birth certificate applications, which had been discussed with the inmates during their annual reviews. (Id. at 11, 146, 147); [Dkt. Nos. 1-1

---

[2] OP 820.2 also requires inmates to obtain their Social Security Card and a DMV Identification Card. See OP 820.2 VII(A)(1).

4

at 4; 12-2 at 95]. Miles did not believe he needed to fill out the application because he had previously provided the VDOC with a copy of his birth certificate.[3]

5. Miles was told again on February 24, 2020 that the VDOC did not have his original birth certificate "on file, just photocopies, and that he would either need to get it sent in or fill out the necessary paperwork to obtain it." Miles refused stating he "ain't doing that. Y'all already got mine." (Hab. at 11-12, 127).

6. On February 24, 2020, subsequent to his refusal, Miles was charged with violating Offense Code 119c, Refusing to Participate in Re-entry Planning or Preparation. (Hab. at 127) (Case No. PRCC-2020-0032). He was convicted on March 12, 2020, and the Hearing Officer imposed the mandatory loss of 90 days of accumulated good time. (Hab. at 128).[4] Miles

---

[3] Miles denies that he was told that he needed to obtain an original birth certificate during his annual review on January 24, 2020. In the state habeas proceedings, the respondent submitted evidence that Miles was informed of the requirement that he obtain an original birth certificate during his annual review on January 24, 2020, and the Supreme Court of Virginia dismissed Miles habeas petition. (Hab. at 204-05). See Wright v. Angelone, 151 F.3d 151, 156-57 (4th Cir. 1998) (holding that the Virginia Supreme Court's summary dismissal of petitioner's state habeas claim was an adjudication on the merits). AEDPA deference applies even when there has been a summary denial. Cullen v. Pinholster, 563 U.S. 170, 187 (2011); see also Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999) ("Where, as here, the state supreme court has adjudicated a claim on the merits but has given no indication of how it reached its decision, a federal habeas court must still apply the AEDPA standards of review.... A state court's perfunctory decision is reasonable if it "'is at least minimally consistent with the facts and circumstances of the case.'") (quoting Wright, 151 F.3d at 157); Lenz v. True, 370 F. Supp. 2d 446, 465 (W.D. Va. 2005) ("even a summary dismissal of a habeas petition is an 'adjudication on the merits' qualifying for § 2254's deferential standard of review" (citing Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (en banc)). This is consistent with Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985), which held that due process is satisfied if there is "some evidence" supporting the disciplinary hearing officer's findings and "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56; see, e.g., Allen v. Mitchell, No. 5:16CT3113, 2020 U.S. Dist. LEXIS 47654, *16 (E.D. N.C. Mar. 19, 2020) ( the hearing officer's "decision to credit the officer's statements over plaintiffs is sufficient to satisfy the some evidence standard in these circumstances" (citing Baker v. Lyles, 904 F.2d 925, 932-33 (4th Cir. 1990)). In this instance, even assuming Miles was not told during the January 24, 2020 annual review, his point is irrelevant because he was told on February 11, 2020 and February 24, 2020 that he needed to obtain his original birth certificate and refused. Based upon the record, there is "some evidence" which supports the hearing officer's decision that Miles had been "instructed multiple times to comply with" the requirement that he obtain an original certificate as required by the VDOC policy, and that he had "refused to do so." [Dkt. 12-2 at 101].

[4] If found guilty of violating Offense Code 119c, the mandatory penalty is a loss of 90 days of accumulated good time. See OP 861.1(V)(A)(119).

5

appealed and on April 28, 2020 the Warden ordered a rehearing because "there was no audio recording for the appeal reviewer." (Id. at 131, 148).[5]

7. The charge was reissued using a different case number (Case No. PRCC-2020-0094), and served on April 30, 2020. (Id. at 139). The rehearing was originally scheduled for May 7, 2020. [Dkt. No. 12-2 at 94]. Miles acknowledged the rehearing was postponed on May 8, 2020 and rescheduled for May 13, 2020. [Dkt. No. 12-2 at 3, 90].[6]

8. Miles requested Polk provide responses to several questions, which Polk did by completing a form on May 8, 2020. [Id. at 94-95]. On May 13, 2020 Reporting Officer Polk participated and testified at the disciplinary hearing via speaker phone, and the Hearing Officer also considered the Polk's May 8, 2020 written responses to the questions Miles had been allowed to ask her. [Dkt. Nos. 12-2 at 3, 92-95; 17 at 5]. Miles was found guilty on May 13, 2020, and the loss of 90 days of accumulated good time was reimposed. [Id. at 140]. Miles noted his appeal on May 14, 2020. [Id. at 99].

9. Miles raised twelve issues in his appeal of his disciplinary conviction, Case No. PRCC-2020-0094, which included: that he had a birth certificate on file from 2011 and that the

---

[5] VDOC OP 861.1 provides that when a rehearing is ordered due to a procedural error "any penalty in force shall be halted and the penalty already served shall be credited to any penalty resulting from the re-hearing." VDOC OP 861.1 (E)(8)(d).

[6] Miles disputes that the rehearing took place on May 13, 2020, and asserts it took place on May 30, 2020. The records, however, establish that the rehearing was originally scheduled for May 7, 2020 [Dkt. No. 12-2 at 87], and was continued to May 13, 2020. Miles acknowledged the "Notice of Postponement" on May 8, 2020 [Id. at 90], and on May 15, 2020 signed page 2 of the Disciplinary Report of his May 13, 2020 conviction. [Id. at 88]. Miles also noted his appeal on May 14, 2020, which was stamped received by the operations Manager on May 20, 2020. [Id. at 99]. Miles admits he appealed the decision and has not questioned the appeal date established by the records and attested to by the Warden. Further, Miles has also not contested the digital stamp on the Disciplinary Hearing Report he signed that indicates the Disciplinary Report was generated on May 14, 2020 at 9:59 a.m. [Id.]. Accordingly, the record, including Miles own signature, establishes that his hearing took place on May 13, 2020. In any event, this dispute is not material to the resolution of the motions.

6

new policy did not state that it was retroactive (id. at 149, Issue #7); that there was "nothing" from the VDOC "that the revised policy applies retroactive[ly]" (id., Issue #5); and that the "30 days requirement" was not followed. (Id., Issue #6).

10. The VDOC admits that Miles provided the VDOC with a photocopy of his birth certificate prior to the January 24, 2020 annual review. Polk verified that there was a copy of Miles birth certificate on file the same week as the annual review. [Dkt. No. 12-2 at 94].

11. The Warden denied Miles' Level I appeal on June 29, 2020 (id. at 148-50), because the record established that Miles had been "instructed multiple times to comply with" the requirement that he obtain an original certificate as required by the VDOC policy, and that he had "refused to do so." (Id. at 153). The Regional Administrator denied Miles Level II appeal on August 3, 2020. (Id. at 153).

12. As a result of the March 12, 2020 conviction in Case No. PRCC-2020-0032, Miles ESC Class Level I (4.5 days of good time credits earned for every 30 days served) was reduced to ESC Class Level IV (0 days of good time credits earned for every 30 days served).[7] On September 16, 2020, the VDOC restored Miles to ESC Class Level I retroactive to May 28, 2020 (the date Miles provided the VDOC with an original of his birth certificate). (Id. at 159); [Dkt. Nos. 1-4; 12-1 at 4, 8].[8]

---

[7] OP 820.3VIII(B)(1)(c) states an inmate found guilty of Offense Code 119c "will receive a formal ICA hearing to reduce the inmate's good time to a Class Level IV until the inmate complies with birth certificate requirements."

[8] In Claim III, Miles admits that his ESC Class Level was restored to Level I on September 16, 2020 but denies that the effective date had not been restored "to 5-28-20 as it was supposed to be." [Dkt. No. 1-1 at 9]. The respondent's sworn affidavit and documentation establishes that Miles was restored to ESC Class Level I on September 16, 2020 and that it was retroactive to May 28, 2020, the date that Miles complied with the policy and provided the VDOC with an original birth certificate. [Dkt. Nos. 1-4; 12-1 at 4, 8]. In his unsworn response, Miles has altered his claim and now argues his ESC Class Level I status should have been deemed retroactive to January 21, 2005. [Dkt. No. 17 at 9, 11]. The Fourth Circuit recently held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard.... [and it is] the district court's duty to consider *only* the

## II. Exhaustion and the Standard of Review

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987). Exhaustion requires that a state prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (to exhaust, a petitioner must have presented to the state court "both the operative facts and the controlling legal principles") (citation omitted); Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (exhaustion requires the "essential legal theories and factual allegations advanced in federal court ... [are] the *same* as those advanced at least once to the highest state court.") (emphasis added).

## III. Standard Of Review

Miles alleges three violations of his right to due process connected to his conviction for violating Offense Code 119c, which resulted from his refusal to obtain an original birth

---

specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted) (emphasis added); see also Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief."). Further, a claim raised in opposition to a motion for summary judgment is not properly before the Court. See Klein v. Boeing Co., 847 F. Supp. 838, 844 (W.D. Wash. 1994). Miles cannot amend his petition by raising new matters in a response to a motion. See Hurst v. District of Columbia, 681 F. App'x. 186, 194 (4th Cir. 2017) ("a plaintiff may not amend her complaint via briefing") (citing Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Car Carriers Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).

certificate. His motion for summary judgment will be denied because it is negated by the undisputed facts and based upon his misunderstanding of retroactivity. The respondent's position is supported by the undisputed facts, and their motion for summary judgment will be granted.

The Supreme Court established the procedural due process requirements for prison disciplinary hearings in Wolff v. McDonnell, 418 U.S. 539 (1974), and held that due process is satisfied if a prisoner receives: (1) written notice of the charges before the hearing; (2) a written statement of the decision by the fact-finder regarding the facts relied upon and the reasons for the disciplinary action; (3) a qualified opportunity to call witnesses and present documentary evidence; (4) an opportunity to seek the aid of a fellow inmate or prison staff on complex matters;[9] and (5) an impartial fact finder. Id. at 563-72.

Further, the "fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact," and "some evidence" supporting the disciplinary hearing officer's findings. Hill, 472 U.S. at 455, 456. "Ascertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56; see Tyler v. Hooks, 945 F.3d 159, 170 (4th Cir. 2019) (holding that Hill "is an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens'" and "does not require

---

[9] Miles requested the assistance of a fellow inmate at the hearing, but a prison staff member was provided for him instead. Miles raised this issue in his appeal to the Warden [Dkt. No. 12-2 at 97], but he did not raise this issue as a claim in state habeas or in his § 2254 petition.

9

examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO].") (quoting Hill, 472 U.S. at 455-56, 457); Solano-Moreta, 536 F. App'x 314, 314 (4th Cir. 2013) (noting that a district court is "precluded from making independent credibility assessments or reweighing the evidence" presented at the disciplinary hearing) (citing Hill, 472 U.S. at 455).

A. *Claim I*

In Claim I, Miles argues that the disciplinary charge was "false" because he had provided the VDOC a copy of his birth certificate in 2011; and that the revised policy, OP 820.1, applies only to newly classified offenders and was not retroactive. Claim I relies primarily upon Miles attempt to engraft the prohibition against retroactivity encompassed by the Ex Post Facto Clause, which applies in the context of criminal law, to the revision of prison rules and regulations. The Fourth Circuit rejected this argument in Jones v. Murray, 962 F.2d 302 (4th Cir. 1992), which concerned a statute enacted after inmates had been committed to the VDOC that required the inmates to provide DNA samples.   In Jones, the Fourth Circuit held that

> The Ex Post Facto Clause does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with good prison administration, safety and efficiency. . .
>
> It is precisely because reasonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner, that they do not constitute additional punishment and are not classified as ex post facto. Moreover, since a prisoner's original sentence does not embrace a right to one set of regulations over another, *reasonable amendments, too, fall within the anticipated sentence of every inmate.*

Id. at 309-10 (emphasis added); see also Ewell v. Murray, 11 F.3d 482, 485-86 (4th Cir. 1993) ("Reasonable prison regulations are not frozen at the time of each inmate's conduct, but rather,

10

they may be subject to reasonable amendments as necessary for good prison administration, safety and efficiency, without implicating ex post facto concerns....[And] prison officials may, consistent with the Ex Post Facto Clause, reasonably increase the penalties for prospective violations by inmates of reasonable prison regulations when the penalties may involve the loss of good conduct time credits).[10] In Jones, the Fourth Circuit concluded that a loss of good time credits for not complying with the statute requiring DNA samples from inmates was not an impermissible retroactive punishment stating that "[s]uffice it to say that whatever punishment or disadvantagement is imposed results, not by reason of conduct that took place before enactment of the statute, so as to become retrospective, but from conduct that occurred after enactment in refusing to comply with a reasonable regulation." Jones, 962 F.2d at 310 n.3. In short, Miles was not punished for any conduct that took place before the effective date of the revised version of OP 820.2, he was punished for conduct that occurred after the revised regulation had been in existence for almost three years, and only after he had been repeatedly warned that he needed to comply.

Here, Miles admits that after the February 11, 2020 meeting with Polk, at which he was told he needed to obtain his original birth certificate, that he "immediately ... research[ed] the revised policy." [Dkt. No. 1-1 at 4]. Despite the plain language of the revised regulation, however, Miles again refused to cooperate in obtaining an original birth certificate on February 24, 2020, and was subsequently charged with violating Offense Code 119c.[11] Further, the record

---

[10] In Ewell, the Fourth Circuit held that the VDOC did not violate the Constitution by issuing regulations that provided for the punishment, by the loss of good conduct credits, of a prisoner who refused to comply with a request to provide a blood sample for DNA testing purposes. Ewell, 11 F.3d at 486-88.

[11] Revised OP 820.1 requires VDOC staff to assist inmates in compiling the necessary Identification Documents the inmate will need when released for employment and other matters. Inmates who refuse to assist staff in obtaining an

establishes that Miles received: (i) notice in writing of the charge; (ii) a written decision setting forth the reasons for the disciplinary action; (iii) the opportunity to call witnesses and present documentary evidence; (iv) the assistance of a prison staff member; and (v) an impartial fact finder. Claim I has no merit, as the record establishes that the respondent complied with the requirements of due process. Accordingly, respondent's motion for summary judgment must be granted and petitioner's motion for summary judgment must be denied in this regard.

*B. Claim II*

Miles second claim is based upon select quotes from a portion of a subsection of the revised version of OP 820.1, referencing "newly classified" inmates and a 30-day grace period. The entire sentence of the subsection that Miles refers to states "[a] newly classified inmate has 30 calendar days after arrival at their initial institutional assignment, or 90 days if not transferred from the Reception Center, *to get an official birth certificate from home*." OP 820.1 VIII(B)(1) (emphasis added). When the entirety of the revised policy's reference to a 30-day grace period for newly classified inmates is read in context, this portion of the revised policy does not apply to Miles who has been in the custody of the VDOC since 1998. Miles was aware of the requirement that he needed to obtain his original birth certificate in sufficient time to comply and chose not to comply. At best, Miles has alleged that the VDOC may have violated its own policy, but he has not shown that his due process rights were violated. Garraghty v. Virginia, Dep't of Corr., 52 F.3d 1274, 1285 (4th Cir. 1995) (holding that "if a state grievance law grants more procedural rights than the constitution requires, failure to comply with state law does not create a federal

---

official birth certificate face the possibility of being charged with violating Offense Code 119c.

due process violation") (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990)). Thus, Claim II has no merit. The record establishes that the VDOC complied with the requirements of due process. Accordingly, respondent's motion for summary judgment as to Claim II must be granted and petitioner's motion must be denied.

*C. Claim III*

Claim III, as set forth in the petition, has no factual merit. Miles alleged that he "was supposed to be restored to" ESC Class Level I with an effective date of May 28, 2020. The record conclusively establishes that Miles was restored to ESC Class Level 1 on September 16, 2020 with an effective date of May 28, 2020. Claim III, is at best, moot. In any event, Claim III lacks merit and, thus, respondent's motion for summary judgment must be granted and petitioner's motion denied.

## IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment [Dkt. No. 11] will be granted, Miles motion for summary judgment [Dkt. No. 16] will be denied. An appropriate Order and judgment shall issue.[12]

Entered this ___8th___ day of ___July___ 2022.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge

---

[12] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.